UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JESGICA ROBERTS, on behalf of herself and all other persons similarly situated, known and unknown,<br><br>      Plaintiff,<br><br>      v.<br><br>APPLE SAUCE, INC., et al.,<br><br>      Defendants. | CAUSE NO.: 3:12-CV-830-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss [ECF No. 16], filed on February 25, 2013. For the reasons state in this Opinion and Order, the Motion is granted in part and denied in part. In addition, the Court's Opinion and Order disposes of three additional motions: Motion for Order to Authorize Notice to Similarly–Situated Persons Pursuant to 29 U.S.C. § 216(b) [ECF No. 4]; Motion Requesting Oral Argument [ECF No. 19]; Plaintiff's Supplemental Motion for an Order to Authorize Notice to Similarly–Situated Persons Pursuant to 29 U.S.C. § 216(b) [ECF No. 22]; and the Plaintiffs' Motion to Toll the Limitations Period for Putative Collective Action Members [ECF No. 28].

**BACKGROUND**

The Plaintiff, Jessica Roberts, on behalf of herself and all other persons similarly situated, has filed a lawsuit invoking the minimum wage provisions of the Fair Labor Standards Act (FLSA). The FLSA gives employees the right to bring their FLSA claims through a "collective action" on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). In this case, the Plaintiff filed a Motion for an Order to Authorize Notice to Similarly-

Situated Persons Pursuant to 29 U.S.C. § 216(b) [ECF NO. 4], seeking conditional certification of this collective action. The Court has the discretionary power to authorize judicial notice to potential class members to inform them of the action and give them an opportunity to participate by opting in. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989).

The Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [ECF No. 16]. Contemporaneous with filing her Response to the Defendants' Motion to Dismiss [ECF No. 34], the Plaintiff filed a Supplemental Motion for an Order to Authorize Notice to Similarly-Situated Persons Pursuant to 29 U.S.C. § 216(b) [ECF No. 22], and also filed a Motion for Leave to File First Amended Complaint [ECF No. 23].[1] The amended pleading removes two of the defendant companies and the overtime claim, rendering moot a portion of the Defendants' Motion to Dismiss. The First Amended Complaint continues to allege that Defendants Apple Sauce, Inc., C.J. Apple I, Inc., and W. Curtis Smith violated the FLSA's minimum wage provisions with respect to restaurant servers, bartenders, hosts, and other tipped employees. According to the Defendants' Motion to Dismiss, this claim fails to state a claim upon which relief can be granted because the Plaintiff did not adequately allege facts in support of a minimum wage claim or adequately plead that Defendants Apple Sauce, Inc., and Curtis Smith were her employers under the FLSA. The Defendant's Motion did not address the Plaintiff's claim that the Defendants failed to properly inform her of the FLSA provisions that pertained to the calculation of her wage.

---

[1] A plaintiff may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). The Plaintiff submitted the amended pleading within 21 days after the Defendants filed their Motion to Dismiss, therefore she was entitled to file the amended complaint without leave of court. However, because the Plaintiff presented the First Amended Complaint as an attachment to a Motion for Leave to File First Amended Complaint, it was not filed as a separate docket entry in this case until April 9, 2013. (Am. Compl., ECF No. 32.)

When the Defendants did not respond to the Plaintiff's Motion for an Order to Authorize Notice, but instead moved to dismiss the Complaint pursuant to Rule 12(b), the Plaintiff requested that the Court toll the limitations period for putative collection action members. The Defendants opposed the Motion.

## ANALYSIS

**A.  Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the Court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

**B.     Minimum Wage Claim**

1.     The Complaint Allegations

From 2002 until January 2013, the Plaintiff was employed as a server at Applebee's restaurant located in South Bend, Indiana. Defendant CJ Apple I, Inc., is an Indiana corporation that owns Applebee's restaurants in Indiana. Defendant Apple Sauce, Inc., is a management company that takes part in operating twenty-three Applebee's restaurants in Indiana. Defendant W. Curtis Smith is the president of Apple Sauce and CJ Apple I, and is the sole living shareholder of those companies. Smith is involved in the day-to-day operations of Apple Sauce.

The Defendants paid the Plaintiff and other similarly-situated current and former employees, who worked as servers, bartenders, and hosts, a sub-minimum hourly wage under the

tip credit provisions of the FLSA. The Plaintiff alleges that the Defendant failed to comply with the tip credit provision when they required the tipped employees to "perform an array of duties outside the duties of their tipped occupations" (First Am. Compl. ¶ 2, ECF No. 32) and failed to inform the employees of the provisions of the tip credit subsection of the FLSA (*id.* ¶¶ 3, 21).

Specifically, the Plaintiff alleges that the Defendants' "practice of regularly utilizing servers, bartenders, hosts and other tipped employees to perform dishwashing, food preparation, kitchen and bathroom cleaning, trash removal, and other duties outside the scope of the tipped occupations, while paying those employees at the tip-credit wage rate" did not comply with the tip credit provision. (First Am. Compl. ¶ 20.) The Plaintiff alleges that, because the Defendants' violations are willful, she and other tipped employees are entitled to recover unpaid minimum wages for a period of three years.

2.      Compensation of Tipped Employees

The minimum wage provision of the FLSA provides that for all the periods pertinent to this lawsuit, covered employees must generally receive wages of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Section 203(m) creates an exception to the minimum wage for tipped employees; it provides that an employer may use a tip credit to determine the wage of a tipped employee if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the cash wage plus the tip credit equal at least the minimum wage each week. 29 U.S.C. § 203(m) (defining the "wage" an employer is required to pay a tipped employee). Thus, a tip credit is the amount of the employee's tips that the employer

can use to make up the difference between $2.13 per hour and the $7.25 minimum wage. Pursuant 29 U.S.C. § 203(t), a "tipped employee" is any "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."

a.  Dual Jobs

The Plaintiff does not dispute that she was engaged in an occupation in which she customarily and regularly received more than $30 a month in tips, and she acknowledges that an employer may use the tip credit for an employee working in a tipped occupation. The Plaintiff's claim is premised on the argument that the FLSA makes a clear distinction between tipped and non-tipped work, and that when an employee engaged in a tipped occupation "begins working in a non-tipped occupation, the tip-credit is not available, and the employee must be paid minimum wage." (Pl.'s Resp. 4.) To support this assertion, the Plaintiff relies on the Department of Labor (DOL) regulations addressing the compensation of tipped employment. *See* 29 C.F.R. §§ 531.50–.60. The regulations confirm that an employer may only take the tip credit under section 203(m) if the employee's occupation is one in which he customarily and regularly receives more than $30 a month in tips. 29 C.F.R. § 531.51. The regulations further recognize that employees may be engaged in dual jobs for an employer:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order

> cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

In her pleading, the Plaintiff asserts that the Defendants regularly used "servers, bartenders, hosts and other tipped employees to perform dishwashing, food preparation, kitchen and bathroom cleaning, trash removal, and other duties outside the scope of the tipped occupations." (First Am. Compl. ¶ 20.) The Court must accept, for purposes of deciding the Motion to Dismiss, the factual allegation that the Plaintiff and other employees working in tipped occupations at the restaurant were required to wash dishes, prepare food, clean the kitchen and bathroom, and remove trash. However, the Court is not required to accept the conclusion that any and all time spent engaged in these duties must be compensated at minimum wage without regard to tips, as this is a legal determination. *See Iqbal*, 556 U.S. at 678 (noting that the tenet that a court must accept at true all of the allegations contained in a complaint does not apply to legal conclusions.) The Court has considered the case law, the statute, regulations, and other DOL publications and opinions, and concludes that Plaintiff's claim is based on a faulty legal conclusion.

The Plaintiff supports her argument that duties like food preparation and dishwashing are those of a separate and distinct non-tipped occupation that must be compensated at the minimum wage rate at all times by citing to *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999), *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998), and *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011). None of these cases, alone or in combination, support the Plaintiff's conclusion.

In *Myers v. The Copper Cellar*, the court found that employees designated to make salads

7

during an entire shift did not engage in a customarily "tipped" occupation and could not be included in the tip pool. 192 F.3d at 550 ("Because the salad preparers abstained from *any* direct intercourse with diners, worked *entirely* outside the view of restaurant patrons, and *solely* performed duties traditionally classified as food preparation or kitchen support work, they could not be validly categorized as 'tipped employees' under section 203(m).") (emphasis added). This is entirely different than holding that a server who performs some food preparation duties during her shift as a server is not a tipped employee, or that any of the time a server spends in this activity must be compensated at the minimum wage without regard to tips.

In *Kilgore v. Outback Steakhouse of Florida*, the issue was whether a tip pool that included the restaurant's hosts was a valid tip pool for purposes of the tip credit provision. The court concluded that restaurant hosts were properly included in the tip pool because they were part of an occupation that customarily and regularly received tips, and were employees who customarily and regularly received tips. 160 F.3d at 301. Stating that hosts had "more than de minimis interaction with the customers," the court noted, that "[o]ne can distinguish hosts from restaurant employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not directly relate with customers at all." *Id.* It would be grossly inaccurate to construe this holding as demanding that duties like washing dishes, preparing food, or cleaning, when performed by a tipped employee, must be compensated at the minimum wage rate at all times. Servers, bartenders, and hosts—who directly related with customers—are not also employed in the second occupation of a dishwasher, cook, or janitor simply because an unspecified amount of time during their shift is spent performing the duties cited in the Amended Complaint: "dishwashing, food preparation, kitchen and bathroom cleaning, [and] trash removal" (Am.

Compl., ¶ 21).

In *Fast v. Applebee's International*, the limited issue on appeal was whether the district court properly determined that the Department of Labor's interpretation of 29 C.F.R. § 531.56(e), as set forth in its Field Operations Handbook, governed the court's consideration. 638 F.3d at 879. The Handbook sets an outer limit on how much non-tipped work an employee can perform before effectively moving into a non-tipped occupation and becoming a dual employee. It advises that employees who spend "substantial time," which is defined as more than 20%, performing related but non-tipped duties should be paid at the full minimum wage for that time without the tip credit. Section 30d00(e) provides:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting table, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988) (available at http://www.dol.gov). The *Fast* court held that the Department's 20% interpretation was controlling. It reasoned that the dual jobs regulation placed a temporal limit on the amount of duties an employee could perform and still be considered to be engaged in the tip-producing occupation by using the terms "part of [the] time" and "occasionally," and that the Handbook provided clarity when it set an outer limit on the tolerance for related duties. *Fast*, 638 F.3d at 879–80. However, the court declined to decide which duties the 20% rule applied to, noting only

that the regulation lists activities such as "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," and that the Handbook refers to "general preparation work or maintenance." *Id.* at 881.

Putting aside the degree of deference owed to the Field Operations Handbook (which the Defendants dispute), the cases, together with the regulations and interpretive guidance, lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server and therefore must be compensated at minimum wage regardless of the percentage of time the employee spends on such duties or whether the duties are generally assigned to servers. The regulation, 29 C.F.R. § 531.56(e), specifically identifies a server's time spent cleaning and setting table, toasting bread, making coffee, and washing dishes as duties that are related to her occupation. Thus, simply because a duty may overlap with another occupation does not mean that the employee is employed in a dual job.

Other subregulatory guidance from the DOL confirms this. In 1980, in response to a request for guidance, the Wage and Hour Division issued an opinion letter addressing whether certain tasks that servers in a restaurant performed after closing still qualified for the tip credit. In this letter, the DOL recognized that duties that were related to a tipped occupation, as long as they were not assigned to just one individual and the tasks were not exclusively the province of a distinct, non-tipped occupation, constituted tipped employment. *See* U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980) (advising that time spent by a restaurant's tipped employees to clean the salad bar, place condiments crocks in the cooler, clean and stock the server station, clean and reset tables, and vacuum the dining room

carpet, after the restaurant closed, "constituted tipped employment within the meaning of [29 C.F.R. § 531.56(e)]" "insofar as the after-hours clean-up" was "assigned generally to the waitress/waiter staff").

Even the DOL's Handbook recognizes that servers may spend some time performing "general preparation work or maintenance" such as cleaning and setting tables, making coffee, and washing dishes and still continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server, are generally assigned to the servers, and do not exceed 20% of their time. There is no allegation in the Amended Complaint that only "specific employees" were routinely assigned to maintenance, preparatory, or closing duties. In fact, the allegations suggest that these incidental duties were assigned generally to the wait staff.

A second problem with the Plaintiff's Amended Complaint is its sparse factual basis. The Amended Complaint states that servers, bartenders, and hosts were, in addition to the duties they performed in their tipped occupation, required to perform dishwashing, food preparation, kitchen and bathroom cleaning, and trash removal duties. The allegations do not intimate the amount of time the employees spent performing these duties or under what circumstances, much less create a reasonable inference that these duties comprised a substantial amount of their time. The practices the Plaintiff has alleged that the Defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations marks omitted); *McCauley*, 671 F.3d at 616. The factual allegations, as stated in the Amended Complaint, even if

proved, do not establish a violation of the minimum-wage provisions of the FLSA based on the performance of dual jobs.

While the Court agrees with the Defendants that "there is no controlling case law or administrative guidance entitled to deference supporting Plaintiff's claim that dishwashing, food preparation, kitchen and bathroom cleaning, and trash removal are per se beyond the acceptable universe of job duties for the tipped occupation of a server," (Defs.' Reply 3, ECF No. 26), it may still be possible for the Plaintiff to state a valid dual occupation claim. The Defendants argue that any allegation that the Plaintiff was required to perform duties outside her occupation more than 20% of the time would not be sufficient to state a claim. They contend that such a claim is not viable under the FLSA because the 20% formulation from the DOL Handbook is not entitled to controlling deference. On that issue, the Court is not prepared to render a decision without first having before it an amended pleading that provides the requisite factual specificity.

In the interest of judicial economy, the Court does note that it would consider an allegation that the Defendants required the Plaintiff to spend more than 20% of her time on duties that did not generate tips or that were outside her tipped occupation an abstract recitation of the elements of a dual jobs cause of action. Although the degree of specificity required in a pleading is not easily quantified, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The required level of factual specificity rises with the complexity of the claim. *Id.* at 405 ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.")

Evolving DOL interpretation, the briefing in connection with this case, and amicus curiae submitted by the Secretary of Labor in other cases reveal the complexity of the type of claim the Plaintiff seeks to advance in this litigation. Given such complexity, merely stating that the Plaintiff performed duties outside her occupation more than 20% of the time does not adequately connect the dots. The Plaintiff must provide more. For example, she must identify the non-tip producing duties she performed, state how many minutes or hours they took to perform, and place that time in the context of the hours worked during the entire shift. If the Plaintiff is unable to provide the requisite facts to support a claim, then the Court will have no reason to consider the deference that should be awarded the 20% interpretation of the dual jobs regulation.

Because the Plaintiff has not set forth a plausible claim that the Defendants violated the minimum wage provisions of the FLSA through the distribution of work to tipped employees, the Court denies the Plaintiff's request for leave to give notice to all of the employees who worked for the Defendants in the last three years and were paid an hourly cash wage less than the minimum wage. The Plaintiff's request to provide notice to all these employees relies on the faulty assumption that some of the duties she performed required the payment of minimum wage, regardless of the amount of time she spent performing them. For the reasons explained above, the Court rejects this argument.

b.  Informing Employees of the Tip Credit Provision

The Plaintiff alleges that the Defendants did not comply with § 203(m) when they did not inform the Plaintiff and their other tipped employees of the provisions of the tip credit provision. To satisfy the FLSA's tip credit notice requirement, an employer "must inform the employee that

13

it intends to treat tips as satisfying part of the employer's minimum wage obligation." *Kilgore*, 160 F.3d at 298; *see also* 29 C.F.R. § 531.59; *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992). The Plaintiff alleges in her Amended Complaint that the "Defendants failed to inform their tipped employees of the provisions of the tip credit subsection of the Act." (First Am. Compl. ¶ 3.) Given the straight-forward notice requirement, this is sufficient to state a claim for a violation of the tip credit provision.[2] However, the Court does not authorize the claim as a representative action.

The Plaintiff has not shown that she is similarly-situated to other individuals. The only evidence in support of the statement regarding lack of notice is the Plaintiff's Affidavit. She states" "When I began working at Apple Sauce, I was told during orientation that I would be earning $2.13 per hour, that if my tips plus hourly wage fell below minimum wage, Apple Sauce would make up the difference." (Pl.'s Aff. ¶ 15.) This recitation of what the Plaintiff was told does not demonstrate a common policy or plan. *See Russell v. Ill. Bell Tele. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (stating that a plaintiff pursuing a collective FLSA action must show that there are similarly situated employees who are potential claimants by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)).

---

[2] The Defendants do not acknowledge the Plaintiff's allegations on this point. *See* Mem. in Supp. of Defs.' Mot. to Dismiss 13 (arguing that "so long as certain conditions not germane to this motion are satisfied (regarding, among other things, notice and who participates in a tip pool), section 3(m) of the FLSA allows an employer to pay a tip credit wage").

### C.    Defendants Apple Sauce and W. Curtis Smith

Defendants Apple Sauce and W. Curtis Smith argue that, even if the Plaintiff otherwise stated a claim under the FLSA, she failed to plead facts beyond mere conclusory allegations to support her claim that they are employers under the FLSA.

The definition of an "employer" for purposes of the FLSA is found in 29 U.S.C. §203(d): "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." Thus, an individual can be considered an "employer" under the FLSA. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *Dole v. Simpson*, 784 F. Supp. 538, 545 (S.D. Ind. 1991) ( "A host of decisions from federal courts of all levels make clear that individuals . . . may be personally liable for FLSA violations.").

The Plaintiffs allege that CJ Apple I, Apple Sauce, and Smith are joint employers of the Plaintiff. This is a legal conclusion. The factual allegations in support of this conclusion are that Apple Sauce is the management company that operates the Indiana Applebee's restaurants owned by CJ Apple I, and that Smith is the president of both companies, the sole living shareholder, and is involved in the day-to-day operations of Apple Sauce, including the policies that give rise to the wage claims.

The allegations regarding Smith's ownership and day-to-day control of operations, if true, are sufficient to plausibly suggest that Smith is an employer. "'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid

wages.'" *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983))). This includes corporate officer with "significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees." *Solis*, 819 F. Supp. 2d at 748 (citing case from district courts in Illinois). *See also Lambert v. Ackerley*, 180 F.3d 997, 1001, 1012 (9th Cir. 1999) (en banc) (affirming individual liability under the FLSA against company executives where they had "operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; the power to determine salaries; and the responsibility to maintain employment records."); *United States Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778–79 (6th Cir. 1995) (finding that corporation's president was "employer" within FLSA where he had "operational control" over the enterprise, ran business, issued checks, maintained records, determined employment practices and was involved in scheduling hours, payroll and hiring employees). Further, it is a reasonable inference that Apple Sauce, as a management company, acted directly or indirectly in the interest of CJ Apple I in relation to its restaurant employees and satisfies the definition of an employer under the FLSA. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973) (holding that management company's "managerial responsibilities" that gave it "substantial control of the terms and conditions of the work" of the employees justified considering management company an employer).

**D.     Motion to Toll the Statute of Limitations**

The FLSA permits complaints for unpaid wages or overtime for two years "after the

cause of action accrued," but willful violations of the FLSA are subject to a three-year statute of limitations. *Id.* § 255(a). An action is "commenced," under the FLSA, on the date the complaint is filed, subject to certain exceptions. 29 U.S.C. § 256. In the case of a collective action, if the individual claimants do not immediately file written consents to become party plaintiffs, the action is considered to be commenced when the written consents are filed with the court. *Id.* § 256(b). The Plaintiff requests that the doctrine of equitable tolling apply to the collective action class so that other similarly-situated individuals do not run afoul of the statute of limitations through no fault of their own. The doctrine of equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Equitable tolling is "granted sparingly" and only when "[e]xtraordinary circumstances far beyond the litigant's control have prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

As discussed earlier in this Opinion and Order, the Court is dismissing the Plaintiff's dual jobs minimum wage claim. The Court is also denying the Plaintiff's request for an order to authorize notice to similarly-situated persons pursuant to 29 U.S.C. § 216(b). The only claim still pending is the Plaintiff's claim that Defendants Apple Sauce, C.J. Apple I, and Smith violated the notice requirements of the tip credit provision. But that claim is not authorized to proceed as a collective action because there is no evidence that other employees were similarly situated. In light of these finding, the Plaintiff's arguments related to notice are moot, as there are no employees entitled to notice of a collective action. Additionally, the Plaintiff cannot argue that the sole cause of any delay is the Defendants' failure to respond to her motion to give notice to

similarly-situated persons. Accordingly, the Court declines to enter an order tolling the statute of limitations for a potential collective action class.

**E.     Summary**

The allegations set forth in the Amended Complaint establish only that the Plaintiff was required to perform some unspecified amount of non-tip producing duties during her work as a server. This is not a sufficient factual basis to set forth a plausible claim that the Defendants unlawfully applied the tip credit provision of the FLSA and violated its minimum wage requirements. However, the Plaintiff may proceed against all three Defendants as joint employers on the claim that she was not properly informed of the tip credit provisions. The Court declines to authorize this remaining claim as a collective action, or to toll the statute of limitation. The Plaintiff may renew her request to authorize notice to similarly-situated persons pursuant to 29 U.S.C. § 216(b) if she first amends her pleading to state a viable claim for unpaid wages, and otherwise meets the requirements for a collective action under the FLSA.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss [ECF No. 16]. The claim that the Defendants failed to properly inform tipped employees of the tip credit provision remains pending. The Court DENIES the Motion for Order to Authorize Notice to Similarly–Situated Persons Pursuant to 29 U.S.C. § 216(b) [ECF No. 4], the Motion Requesting Oral Argument [ECF No. 19], the Plaintiff's Supplemental Motion for an Order to Authorize Notice to Similarly–Situated Persons Pursuant

to 29 U.S.C. § 216(b) [ECF No. 22], and the Plaintiffs' Motion to Toll the Limitations Period for Putative Collective Action Members [ECF No. 28].

SO ORDERED on May 13, 2013.

                                                   s/ Theresa L. Springmann  
                                                  THERESA L. SPRINGMANN  
                                                  UNITED STATES DISTRICT COURT  
                                                  FORT WAYNE DIVISION